Whenever you're ready, counsel. May it please the court. My name is Diane Winland. I represent Frank Luna on behalf of the state of Alaska. I intend to reserve two minutes of my time for rebuttal. I'd like to take this opportunity to clarify just a couple of points that were made in the state's briefs. First of all, I'd like to point out that the evidence that was admitted here, that is the evidence of Basurto's prior sexual assaults, We agree. It likely affected the outcome of this case. But the point here is that it was allowed to affect the outcome of this case. This evidence was relevant and found to be so by the state court under Evidence Rule 402. It was offered for proper purposes under Evidence Rule 404b1 and b3. What was the purpose for which it was offered? It was offered for several purposes. The first purpose was to prove both the intent, the mental state of the defendant in particular, his intention of disregarding her lack of consent, the victim, being her lack of consent. So that was a non-propensity purpose for which it was offered under Evidence Rule 404b1. It was also offered for propensity purposes under Evidence Rule 404b3. And Evidence Rule 404b3 specifically allows evidence of prior sexual assaults in cases like this one to be offered to prove propensity. So that purpose was on the table. The judge looked at this evidence and the judge considered, was it offered for a proper purpose? Was it relevant? And also under Rule 403, was its prejudicial effect, whether or not that was outweighed by the probative value of the evidence? I don't think it's the petitioner's position that the evidence was inadmissible, right? I think the question is whether or not the failure to give a limiting instruction was constitutional error. I don't think anybody's arguing it wasn't admissible. That's correct. And the only point that I'm trying to make is that much of what the petitioner argues is what an awful effect this evidence had. Much of his brief focuses on the effect that this had on the outcome of the trial. And what I want to avoid is the confusion between the effect, the proper effect that this evidence had and was allowed to have, versus the effect from the lack of a particular jury instruction. Because they are very different issues. Which brings me to my second point, and that has to do with the lack of a jury instruction. And again, I don't believe there's any dispute. The state court should have given what in Alaska is usually referred to as a Bingaman instruction. And that is an instruction that tells the jury, in cases where evidence has been admitted for propensity purposes, tells the jury that, look, you have this evidence in front of you, you may use it for these different purposes, but you must convict him for the crimes charged. You are not permitted to convict him based on the fact that he committed other crimes. And that instruction was not given. It was not given, and the state agrees it should have been given. But my point here is, the question is not whether it should have been given. This is a federal habeas case. So the question is not, was there a mistake? But whether a mistake constitutes an unreasonable application of clearly established federal law. And that is clearly established by the U.S. Supreme Court. There is no U.S. Supreme Court case holding that the failure to instruct the jury on the use of properly admitted propensity evidence, that that is a violation of due process. Sertog has not cited a single case to the contrary. And at this point, as this court itself pointed out in the Garceau v. Woodford case, in Garceau, this court pointed out that the court in Estelle v. McGuire has reserved the issue on whether or not propensity evidence should be admitted, and also whether a jury instruction must be given when propensity evidence is admitted. Okay, you see, I think that's enough of the case now. I think we all recognize that under Estelle, there's no clearly established Supreme Court case that says in so many words, right, that a limiting instruction, well, is required when propensity evidence is admitted. On the other hand, there are cases that say, right, in a criminal case, you have to look at all the instructions given as a whole in order to determine whether or not the petitioner's due process rights are violated. That's clearly established law, too. So the question is, right, isn't it coming down to which line of cases should control? Well, there are two issues there. And the first one is, is Estelle and that line of cases, is that sufficiently specific to be considered clearly established federal law? And Estelle and most of those cases predate the Anti-Terrorism and Effective Death Penalty Act. So that must be kept in mind, because after 1996, and this case is subject to that act, you must have what is now defined as... Well, but the Anti-Terrorism Law is clearly established Supreme Court law decided after 1996. No, Your Honor. But it did set a more specific standard on what qualifies. And it's the state's position that, yes, there are general fundamental fairness issues, but is that specific enough to qualify as clearly established federal law? I think that's the question. I think you're right. As far as what the question is, I think I agree with that. Speaking only for myself. Speaking for myself, I want to ask you about the Anderson case. It's pre-EDPA, but it states very clearly, the standard for evaluating jury instructions is whether the alien instruction by itself so infected the entire trial for the resulting conviction, whether it violates due process. Here are the testimony of those witnesses. It's really central to this case, was it not? That was central to the case. But I believe, and we have cited the case, and both Estelle talks about this, and more recently, both in Kentucky v. Wharton, and most recently the Supreme Court decision in Middleton v. McNeil, makes it very clear that in deciding whether an alien instruction has so infected the trial, you have to look at more than just the single instruction. You look at a wide range of things. And in our case, you must look at the other instructions that were given as well as the arguments of counsel, which in fact favored the defendant's position in this case. Well, what it boils down to, if I take some of your argument here, you start off by acknowledging that this evidence was extremely prejudicial, basically, and it was intended to, and it's properly admitted. Then you tell us, rightly so, that under state law, in recognition, clearly, of the effect of such propensity evidence that there should have been a limited instruction because the juries hearing that kind of information are very likely, unless they're clearly told otherwise, to say, look, I have doubts about this particular incident, but look, he's done it all these other times, and if we make a mistake here, he should have been nailed for these priors, and so let's get him for that. And that's what that limiting instruction is intended to avoid. So the question then comes down to whether or not under clearly established due process standards that you can't have a trial that is so infected by omission of something where the jury clearly needs it in order to not engage in an improper conviction, whether those circumstances prevailed here. So what is it in the trial record, the totality of the instructions, that substituted for the specific limited instruction that was specifically designed to deal with the prejudice that would occur in this case? If you take a look in the jury instructions, which are included in the excerpt tab with Hume, beginning on page 4, you have a clear instruction to the jury about applying the instructions, the law as given by the court. Not long after that, you have a specific instruction explaining to the jury the presumption of innocence and the burden of proof. From there, after making that point very clearly, and it's a fairly lengthy instruction, explaining those issues to the jury, the judge then goes through the indictment, and that indictment is offense-specific. It says that here are the counts, and it says, okay, count 1. Count 1 charges the specific offense on a specific date against a specific victim. Serto did knowingly and unlawfully engage in sexual penetration with B.B., without the consent of B.B., by putting his penis in her mouth. It was very specific. So he went through each of those very specific charges. And then he says, to these charges, the defendant has pled not guilty. These pleas place upon the state the burden of proving beyond a reasonable doubt every material allegation, those specific allegations that the judge had just read to the jury. Following that, he does it a second time for each specific offense. All right, we got that point. You're running out of time. Go on. What other instructions? So far I haven't heard anything that tells them what to do with the evidence of these witnesses. But that's the whole point. What he has done is gone through and said, jury, you can only convict if the state has proved beyond a reasonable doubt. So what's the relevance to the jury of these witnesses' testimony? As the prosecutor and the defense counsel explain in their closing arguments, it goes primarily to intent. And, in fact, the prosecutor could have gone a step further and said it can also be used for propensity. She chose not to. She didn't need that for her closing argument. She focused on intent. There was nothing in front of the jury which would have suggested to them that contrary to these specific instructions that they could step out and say, okay, we're going to convict him of something else. So we have to rely on the prosecutor's argument. And the jury instructions were very specific. Now, they didn't take that next step and remind the jury, oh, by the way, I told you you had to convict of only these charges, but just remember you can't convict for those. Yes, it would have been nice if the judge had given that additional reminder. But as the Alaska Court of Appeals found, and it's particularly their discussion in Douglas' case, they were told that they were to be convicting only of these offenses. It takes a bit of a leap of faith to think that the jury, having been told explicitly, I'm going to give the instructions on the law that applies, and you omit the law that says what you can do with a prior act's evidence, that somehow the jury picks it up from presumption of innocence and reading the indictment charges. They're going to say, well, we got that evidence, so why can't we consider it to determine that this person was guilty, even if we're not sure whether he actually did this crime. As the state judge found, that additional reminder would have been redundant given the instructions that were given. In fact, the Alaska Court of Appeals, both in this case and in Douglas in particular, said, look, we assume that the jury is going to act on the instructions they are given. We're worried about the one that they didn't. Okay, you're over time. Thank you. Counsel. Good morning. My name is Avril Lerman. I'm here on behalf of Stephen Misurko. The district court was correct in granting Mr. Misurko's petition for a death of habeas corpus. The state has argued here that the closing arguments of counsel cured the court's refusal to grant a request of limiting an assertion. But I would like to note for the court that, in fact, one of the things that the state attorney said in the closing argument when dealing with the repeated lies of the complaining witness was, we cannot punish V.B. for lying by rewarding Misurko. This is not the kind of argument that encourages the jury to judge the case solely on the merits of this case. The prosecutor is essentially telling the jury that quitting Misurko because V.B. is unbelievable will reward him. There were over 100 references in the prosecutor's closing argument to the three other witnesses who testified about Misurko's prior acts or to either individually by name or as a group. In other words, they said these women collective references. There were over 100 references in the prosecutor's closing argument. This was not a case in which the prosecutor exercised careful restraint. At any point, the prosecutor did not support the giving of a limiting instruction, which is, in fact, a routine instruction. In this case, the evidence was not specifically admitted for propensity purposes. No one ever said it was. You have an affirmative instruction to the jury that says you can consider this as propensity evidence. On the other hand, there was no limiting instruction, but the argument really is, as your opponent said, the closing argument really focused on the use of this as non-propensity evidence, I think. Now, so what I'm getting at is it's almost the same question I asked Ms. Wentman. There's no specific case that says, in that context, due process requires a limiting instruction. So what's the best case you have that says this amounts to constitutional error as opposed to, I'll call it, minimum error under state law? Well, what's your best case that says this is constitutional error? Your Honor, we discussed five specific cases. The reason you have to discuss five is because they all sort of go all around it. There's nothing right on point, huh? Well, I guess I would argue that the magistrate Roberts was correct in putting forward Estelle v. McGuire as a case that was very indicative of the rule of law as articulated over a very long period of time by the United States Supreme Court that said in the holding twice, because of the limiting instruction, we find no constitutional error. Now, semantically, you could say that, too. I mean, you could say it the way they said it, or you could say there was no limiting instruction. I would submit that the clearly established federal law requirement of AEDPA is designed to prevent lower federal courts from creating new rules of law and developing new rights that have never been passed through the Supreme Court. This case is not one of those. And the kind of question posed by the facts of this case is of such historical background. The issue of whether it's propensity evidence, whether it's 404B1 evidence, prior bad act evidence has such a long pedigree of suspicion and concern for wrongful conviction. And I think that under the clearly established federal law requirement, that suspicion has been very well respected by the United States Supreme Court and repeatedly discussed. I think the United States Supreme Court has repeatedly discussed the requirement of the trial court to protect the fundamental right of a defendant to be convicted not because he's a bad man, not because he does bad things to women, but because, beyond a reasonable doubt, he did these bad things to this woman. What do we do with the Court of Appeals' careful analysis of harmless error? Don't we owe deference to their analysis saying that if you look at the totality, including the prosecutor's argument, they find that it was harmless? Under AEDPA, aren't we supposed to give deference to that? I would respectfully submit that the Court of Appeals' analysis could not really be called careful and that the Court of Appeals, in fact, I think, has completely, for one thing, overlooked federal law. How careful is that? There was no discussion of federal law, really, in the Court of Appeals' decision. And furthermore, the Court of Appeals disregarded numerous issues that were critical. I don't know. Was federal law urged upon them? It absolutely was urged upon them. Otherwise, we would be facing an exhaustion requirement at this point, which we are not discussing. Federal law was absolutely urged upon them. In fact, I have to say, the federal law was briefed carefully at every stage of this proceeding in a manner that's not always true. I would submit that the reason we have federal habeas jurisdiction here is for the purpose of making sure that state courts pay attention to rights under the federal Constitution, and this is a case that really deserves that kind of review. The clearly established federal law regarding limiting instructions, while it's correct that the prosecutor has repeatedly argued that there is no specific case saying a limiting instruction absolutely must be given every time such evidence is admitted, the Supreme Court and other courts have emphasized that a rule of law may be sufficiently clear for habeas purposes even when it's set forth in terms of a generalized standard rather than a bright-line test. Much of constitutional litigation focuses on generalized standards necessarily because the principles are so critical and so susceptible of coming up in so many different factual ways. I think that the fact that in Estelle v. McGuire, in Mitchelson-Henderson, Dowling, over and over the U.S. Supreme Court said the constitutional problem with this prior bad act evidence, which is highly risky from the point of view of an unfair conviction, this constitutional issue doesn't exist here because the court gave good limiting instructions and told the jury that although it's human to jump to certain kinds of conclusions, in their role as jurors they simply must not do that. And I disagree that the existing instructions were adequate. If the existing instructions were adequate for that purpose, then no limiting instruction ever need be given in any case because there's always an instruction of element by element per charge, and that does not address in a case like this where the prior bad act evidence occupied fully half of the trial. It's interesting when you compare some of the other cases. There, there was a little bit of prior bad act evidence in one case. There was one sentence of hearsay. Here, the prior bad act evidence was the bulk of the trial. And if one charging instruction could be adequate to protect a defendant from a wrongful conviction on that basis, there would never be a requirement for any limiting instruction. The court would say, well, the fact that the judge said he balanced the evidence under 403, even though he made no record of that at any point, is adequate and no limiting instruction ever need to be given. The defendant requested limiting instructions at many points. The state never supported that. The state argues that it didn't take advantage of the situation because it didn't mention the word propensity. A careful reading of the state's closing argument, both of them, has got to suggest that's not true. The description of Mr. Viserto's hunting trails, his horrible crime scene, etc., the call of the closing argument issued by the state was a call to convict Mr. Viserto, not to punish Verlina Gritton for lying by rewarding Viserto. And the reference there was to prior acts that had been alleged. Does the court have any further questions? No, thank you very much. All right, counsel, we appreciate the argument. Case is submitted. That takes us to the next case on calendar, Mitromina Natives, Inc., versus Department of the Interior, U.S. Department of the Interior.
judges: Nelson, Tashima, Fisher